UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

       v.                                                        Crim. No. 5:08-CR-93-1

Aaron Pendergrass,

       Defendant.

## **REPORT AND RECOMMENDATION**
(Doc. 233)

Aaron Pendergrass, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence in connection with his 2010 conviction for engaging in a conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Doc. 233.)

Pendergrass contends in his initial motion that: (1) the district court erred in failing to grant his motion to withdraw his plea of guilty; (2) his plea agreement was never accepted by the district court; and (3) he received ineffective assistance of counsel in the course of plea negotiations, in violation of the Sixth Amendment of the United States Constitution. (Doc. 233.) In a reply, Pendergrass adds a fourth claim, one not raised in his initial motion, contending that there was some improper collusion between the government and the court which led to the transfer of his case from one district judge to another. The government opposes Pendergrass's motion on the grounds that it is untimely. The government further argues that Pendergrass's claims of ineffective assistance of counsel and error in the denial of his motion to withdraw his guilty plea,

were raised on direct appeal and rejected by the court of appeals. Finally, the government contends that Pendergrass's claim that his plea was never accepted by the district court was not raised in his direct appeal and is therefore waived. For the reasons set forth below, I recommend that Pendergrass's motion be DENIED.

I.  **Background**

   A.  **Offense Conduct**

Pendergrass's Presentence Report ("PSR") and the transcript of Pendergrass' sentencing reveals the following. Between March and May of 2008, Pendergrass conspired with several individuals, including Keallie Lacross and Diane Lefebvre, to sell cocaine base and heroin in northern Vermont. (PSR ¶ 8.) Lacross and Lefebvre were the primary distributors working for Pendergrass. (*Id*.) During the period of the conspiracy, a confidential informant working with the Essex Police Department purchased a total of 48.11 grams of cocaine base from Lacross and Lefebvre. (*Id.* at ¶ 10.) On May 27, 2008, Lefebvre sold the confidential informant five grams of heroin. (*Id*.) Investigators also confiscated 12.5 grams of crack cocaine from a teenage courier, Nelson "Baby" Lopez, who claimed to be working for Aaron Pendergrass. (*Id.* at ¶ 9.) Through informant purchases and seizures, the government's investigation yielded 5 actual grams of heroin and 60.61 actual grams of cocaine base. However, testimony at Pendergrass's sentencing revealed that the drugs distributed in the course of the conspiracy far exceeded that quantity. (*Id.* at ¶¶ 22-30.)

## B. Plea Agreement and Change of Plea

On March 23, 2009, Attorney Gordon Gebauer was appointed to represent Pendergrass, replacing prior counsel who had been permitted to withdraw. On July 22, 2009, a written plea agreement was filed with the court, wherein Pendergrass agreed to plead guilty to Count 1 of the Indictment which charged Pendergrass with engaging in a conspiracy to distribute heroin and 50 grams or more of cocaine base. (Docs. 1, 130.) Pendergrass also stipulated that the conspiracy involved between 500 grams and 1.5 kilograms of cocaine base, and that the conspiracy involved the use of a minor. (Doc. 130.) In exchange for Pendergrass's plea to the conspiracy count, the government agreed to move to dismiss the remaining counts of the Indictment at sentencing, to recommend a sentence at the low end of the applicable Sentencing Guideline range if the final offense level was 34 or above, and to recommend that credit be given to Pendergrass for accepting responsibility under the Sentencing Guidelines. (*Id.*)[1]

On July 22, 2009, Pendergrass appeared with Attorney Gebauer before then-Chief Judge William K. Sessions III for the purpose of entering a plea of guilty to the conspiracy count charged in Count 1 of the Indictment. (Doc. 145 at 6.) Judge Sessions engaged Pendergrass in the colloquy required by Fed. R. Crim. P. 11(b). (Doc. 145 at 3-18.) In the course of that colloquy, Pendergrass stated under oath that he wished to plead

---

[1] The plea agreement called for both the dismissal of pending counts and stipulations concerning the Sentencing Guidelines. As such, it was a hybrid plea agreement, incorporating the components of plea agreements under Fed. R. Crim. P. 11(c)(1)(A) and 11(c)(1)(B).

guilty to Count 1 of the Indictment, that he had had an adequate opportunity to review that Count with Attorney Gebauer, and that he was satisfied with the representation he had received from Gebauer. He further acknowledged he understood that Count 1 alleged he had engaged in a conspiracy to distribute heroin and in excess of 50 grams or more of cocaine base. He explicitly acknowledged that by pleading guilty he faced imprisonment for a period of a 10-year mandatory minimum up to life, a term of supervised release of not less than six years, a fine of not more than $4 million, and a $100 special assessment. (Doc. 145 at 5.) Pendergrass acknowledged that he was waiving his right to a trial and other constitutional rights associated with a trial. (*Id.*) Judge Sessions thereupon reviewed the plea agreement with Pendergrass, including the stipulation that the quantity of cocaine base involved in the conspiracy was 500 grams to 1.5 kilograms and the stipulation regarding the use of a minor in the conspiracy. Pendergrass acknowledged that those stipulations were consistent with his understanding of the plea agreement. He further indicated that no one had made any threat or promises to induce him to plead guilty. The Assistant United States Attorney recited the factual basis for the plea, including that the amount of cocaine base seized in the investigation amounted to over 60 grams, and Pendergrass confirmed to the court that those facts were accurate. (*Id.* at 17.) Judge Sessions accepted the plea of guilty, concluding that it had been made voluntarily, with a full understanding of the charges and consequences thereof. Nonetheless, the Judge deferred acceptance of the plea agreement, and ordered a presentence report. (*Id.* at 19.)

### C. Motion to Withdraw Guilty Plea

On September 1, 2009, Pendergrass filed a motion to withdraw his guilty plea, and a hearing on the motion was held before Judge Sessions on October 1, 2009. (Doc. 144; Doc. 183.) While he did not deny his involvement in the charged conspiracy, Pendergrass argued that the controlled substances found on Nelson "Baby" Lopez should not be attributed to him. (Doc. 183 at 3.) He further argued that if those quantities were not attributed to him, the offense involved less than 50 grams of cocaine base, and this deficiency amounted to a fair and just reason for withdrawing his guilty plea. (*Id*.) Judge Sessions questioned Pendergrass's position, noting that Pendergrass had stipulated in the plea agreement that the conspiracy involved more than 500 grams of cocaine base, and thus it did not matter whether the Lopez quantities were attributed to Pendergrass. (Doc. 183 at 4-6.) Judge Sessions also pointed out that, although Pendergrass was not denying his participation in the offense, if he withdrew his plea and was subsequently convicted, he faced loss of his three-point sentencing reduction for accepting responsibility.

Judge Sessions denied Pendergrass's motion, stating that Pendergrass had not demonstrated a fair and just reason for withdrawing his guilty plea. (*Id.* at 23.) The Judge indicated that drug quantity was an issue to be addressed at sentencing, and suggested that if, at sentencing, the government was unable to prove that the conspiracy involved more than 50 grams of cocaine base, the court could reconsider Pendergrass's motion to withdraw his plea.

## D. Sentencing Hearing

On December 23, 2009, this matter was re-assigned to United States District Judge Christina Reiss. Prior to sentencing, the United States Probation Office submitted a PSR to the court, recommending that the Sentencing Guideline range with respect to imprisonment was 210-262 months, based on an adjusted offense level of 37 and a Criminal History Category of I. (PSR ¶ 105.) The PSR concluded that Pendergrass was not eligible for the two level "safety valve" reduction in the offense level found at U.S.S.G. § 5C1.3 because Pendergrass played a leadership role in the conspiracy and had not truthfully disclosed all information to the government. (*Id.* at ¶ 61.) Both Pendergrass and the government filed extensive sentencing memoranda prior to sentencing. Pendergrass objected to the application of various provisions of the Sentencing Guidelines which led to the recommendation of a sentencing range of 210-262 months. He also sought a downward departure from the applicable Sentencing Guideline range, or, alternatively, a non-guideline sentence of 120 months, the statutory mandatory minimum sentence. (Doc. 187.) Pendergrass advanced a number of arguments in support of his request for a 120-month sentence, including the perceived disparities between the offense-level calculation for offenses involving cocaine base and those involving powder cocaine. Pendergrass also asserted that he should not be subject to the four level enhancement for a managerial role in the offense under U.S.S.G. § 3B1.1 as proposed in the PSR. The government argued in support of the Sentencing Guideline calculation, adding an argument that Pendergrass should be denied the safety valve reduction because he had also engaged in credible threats of violence. The government's

arguments in support of the Sentencing Guideline calculation were merely academic, however, as the government also recommended that the court impose a non-guideline sentence in the range of 120-144 months, taking into account the factors set forth in 18 U.S.C. § 3553(a). (Doc. 188.)

A sentencing hearing was held on May 5, 2010. (Doc. 216.) Judge Reiss outlined the Sentencing Guideline application issues remaining in dispute, specifically taking note of Judge Sessions's prior comments about evidence of drug quantity. The Judge concluded that there appeared to be no issue as to the drug quantity involved in the conspiracy in light of the stipulation set forth in the plea agreement. (*Id.* at 7.) Accordingly, contrary to Pendergrass's claim, Judge Reiss stated that she "plan[ned] to accept [the plea agreement]," including the drug quantity stipulation. (*Id.* at 14.) Her subsequent statements in support of the sentence confirm her acceptance of the plea agreement. Judge Reiss declined to reconsider Judge Sessions's denial of the earlier motion to withdraw the plea. (*Id.* at 13, 14.)

Other Sentencing Guideline issues remained in dispute, including whether Pendergrass engaged in credible threats of violence; whether he was a leader or an organizer; whether the conspiracy involved five or more participants; whether Pendergrass solicited others to participate in the conspiracy, and whether he directed a co-conspirator to sell drugs to certain people. (Doc. 216 at 7, 8.)

After hearing testimony from the investigators and co-conspirators, including Lacross and Lefebvre, Judge Reiss ruled on the Sentencing Guidelines issues. (Doc. 216 at 180.) The court found that, although the government had not established by a

preponderance of the evidence that Pendergrass had engaged in credible threats of violence, Pendergrass was not eligible for the safety valve due to his leadership role and failure to disclose all information. (*Id.* at 182.) The court concluded that the four-level role in the offense enhancement found at U.S.S.G. § 3B1.3 was appropriate. (*Id.* at 183.) The court then adopted the stipulations set forth in the plea agreement regarding the drug quantities and the use of a minor in the offense. (*Id.* at 185.) In accepting the parties' stipulations regarding drug quantity, Judge Reiss noted that the stipulation was "corroborated by the evidence" presented at the sentencing hearing. (*Id.* at 196.)

Following presentation of the evidence and allocution of counsel, the court determined that Pendergrass faced an imprisonment range under the Sentencing Guidelines of 210 to 262 months, based on an adjusted offense level of 37 and a Criminal History Category of I, with a statutory mandatory minimum sentence of 120 months. (Doc. 216 at 196.) Taking into account the disparity between the Sentencing Guidelines for powder cocaine and cocaine base offenses, as well as the factors set forth in 18 U.S.C. § 3553(a), Judge Reiss sentenced Pendergrass to the statutory mandatory minimum term of 120 months, followed by 5 years of supervised release, together with a $100 special assessment. (*Id.* at 212-13.) No fine was imposed. (*Id.* at 213.)

### E.     On Appeal

Pendergrass took a direct appeal of the conviction and sentence, contending that the district court erred in denying his motion to withdraw his plea of guilty. (Doc. 218 at 2.) Specifically, Pendergrass argued that his objection to the inclusion of cocaine seized from Nelson Lopez in the overall drug-quantity calculation presented a "fair and just"

8

reason for withdrawing his plea, within the meaning of Fed. R. Crim. P. 11(d).  (*Id.* at 3.) He further argued that he should have been permitted to withdraw from his plea because it was the product of ineffective assistance of counsel.  (*Id.* at 5.)

The appellate court affirmed his conviction and sentence, concluding that Pendergrass failed to demonstrate a fair and just reason for withdrawing his plea of guilty.  (Doc. 218 at 1); *United States v. Pendergrass*, 403 F. App'x 552 (2d Cir. 2010). The court noted that it was irrelevant whether the 12 grams of crack cocaine recovered from Nelson Lopez originated with Pendergrass because the government proved at sentencing that the conspiracy involved in excess of 50 grams of cocaine base as alleged in the Indictment.  The court also observed that Pendergrass had been presented with all of the government's evidence at his plea allocution, had acknowledged the information to be accurate, and still pled guilty.  (*Id.*)  The court rejected Pendergrass's ineffective assistance of counsel claim as well, finding that Pendergrass had failed to prove that but for the claimed error by counsel he would have proceeded to trial.

On March 9, 2011, Pendergrass filed a Petition for Writ of Certiorari in the United States Supreme Court.  (Doc. 236 at 13.)  The Petition was denied on April 18, 2011. (Doc. 236-2.)

### F. The Instant Motion

In the instant motion, filed on April 20, 2012, Pendergrass renews his ineffective assistance of counsel claim, as well as his argument that the district court abused its discretion in failing to permit him to withdraw his plea.  Pendergrass also adds an argument that the district court erred in not accepting the plea agreement at the time of

9

sentencing. The government opposes Pendergrass's motion, arguing that it is untimely and therefore barred by the one-year statute of limitations governing § 2255 motions. (Doc. 236 at 16.) The government also asserts that both the denial of the motion to withdraw the plea and the ineffective assistance of counsel claim were raised on direct appeal and rejected by the court of appeals. Finally, the government argues that the issue surrounding the formal acceptance of the plea agreement was not pursued on direct appeal and was thus forfeited. (*Id.*)

## II. Discussion

### A. General Standards Governing § 2255 Motions

A prisoner in federal custody may file a motion for a writ of habeas corpus on grounds that his sentence was imposed in violation of the Constitution or federal laws, was issued by a court that did not have jurisdiction, was in excess of the lawful maximum, "or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). This form of collateral attack is therefore generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir.2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995)).

### B. Timeliness

The government asserts that Pendergrass's motion is barred by the one-year statute of limitations governing § 2255 motions. Section 2255(f) provides that, "[a] 1-year

period of limitation shall apply to a motion under this section," which shall run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Pendergrass's motion falls under paragraph (1) only, since Pendergrass does not allege facts implicating the remaining paragraphs. The Supreme Court has held that a judgment of conviction becomes final when the Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

As noted above, Pendergrass's Petition for Writ of Certiorari was denied by the Supreme Court on April 18, 2011. (Doc. 236-2.) Thus, Pendergrass had one year from that date to file an appropriate motion. The government contends that Pendergrass filed his motion on April 20, 2012, and, as such, the motion is barred.

Pendergrass's signature on the motion is dated April 9, 2012. (Doc. 233 at 14.) Under the doctrine of the "prison mailbox rule," courts have considered an inmate's signature date as a motion's effective filing date. S*ee Reilly v. Warden, FCI Petersburg*,

11

947 F.2d 43 (2d Cir. 1991); *Plasencia v. Barkley*, No. 05-CV-1722, 2008 WL 4185879, at \*2 n.5 (E.D.N.Y. Sept. 9, 2004). Pendergrass's motion is therefore timely.

### C. Rule 11 Claim

Pendergrass argues that the court abused its discretion when it sentenced him without accepting his plea agreement, claiming this purported failure violates Rule 11 of the Federal Rules of Criminal Procedure. Pendergrass did not raise this claim on direct appeal. The Supreme Court has stated that "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994) (internal quotations omitted)). A claim not raised on direct appeal is procedurally defaulted and cannot provide the basis of relief for a § 2255 motion to vacate unless the defendant can demonstrate cause for the procedural default and actual prejudice resulting from it, or actual innocence. *See Zhang v. United States*, 506 F.3d 162 (2d Cir. 2007).

"Cause" requires some hindrance to the defendant outside of himself, while "actual prejudice" means an actual and substantial disadvantage. *DeJesus v. United States*, 161 F.3d 99 (2d Cir. 1998). Pendergrass fails to meet this burden. He provides no explanation as to why this argument was not raised on direct appeal, and the court can discern nothing preventing him from raising it earlier.

In any event, Pendergrass's claim lacks substantive merit because it relies on the mistaken assertion that his plea agreement was not accepted by the district judge. In fact, as discussed above, Judge Reiss explicitly indicated her acceptance of the plea agreement at the sentencing. (Doc. 216 at 14.) In so doing, the court fully complied with Fed. R.

Crim. P. 11(c)(4), which provides that in plea agreements made pursuant to Rule 11(c)(1)(A), if the court accepts the agreement, "the agreed disposition will be included in the judgment." Here, the plea agreement's provisions, including the drug quantity stipulation, the acceptance of responsibility offense level reduction, and the agreement to dismiss the remaining counts of the Indictment were indeed incorporated into the judgment. Moreover, there is no corresponding requirement in Rule 11(c)(4) for Rule 11(c)(1)(B) plea agreements to be formally "accepted." *See United States v. Nichols*, 267 F. App'x 789, 792, n.1 (10th Cir. 2008).

### D. Claim of Improper Collusion

In his reply, Pendergrass asserts for the first time that the government and the court orchestrated a transfer of his case from then-Chief Judge Sessions to Judge Reiss in order to avoid concerns Judge Sessions purportedly held concerning the sentencing stipulations.[2] Pendergrass writes: "[I]t is the petitioner's undeniable belief that there was ex parte communication between the government and the court, which led to a substitution of judges . . . ." (Doc. 241 at 2.)

While courts should generally be cautious about addressing issues raised for the first time in a reply, there are occasions when consideration of such issues is appropriate. In light of Pendergrass's *pro se* status and the nature of the claim, the court should consider Pendergrass's assertion of ex parte communication. The claim, however, is entirely conclusory and lacking in evidentiary support. In fact, this case was one of 26

---

[2] The United States has not responded to this claim of improper conduct.

13

criminal cases transferred to Judge Reiss just four days after her appointment as a United States District Judge. (Doc. 167.) There is no evidentiary support for the assertion that the transfer was made because of some collusion between the United States Attorney and an unknown person or persons vaguely described as "the Court." A habeas petitioner bears the ultimate burden of proving by a preponderance of the evidence that a constitutional violation has occurred. *Epps v. Poole*, 687 F.3d 46, 49 (2d Cir. 2012). Pendergrass's speculation does not satisfy that burden and his claim of improper collusion between the government and the court is meritless. *See United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970) (denying a motion to vacate without a hearing where allegations were "vague, conclusory, palpably false[,] or patently frivolous").

### E. Claims Considered on Direct Appeal

A § 2255 motion "cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001); *see United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255."). If a defendant attempts to raise a claim that was already litigated on direct appeal, "he will be procedurally barred from proceeding with the challenge." *Sanin*, 252 F.3d at 83. The only exception to this rule is if "there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980).

On direct appeal, Pendergrass claimed, as he does now, that then-Chief Judge Sessions abused his discretion in denying Pendergrass' motion to withdraw from his plea agreement. In a related claim, Pendergrass argued on direct appeal, and in this motion, that he should have been allowed to withdraw his guilty plea due to ineffective assistance of counsel at the time of plea negotiations. (Doc. 218 .) The Second Circuit rejected both claims. In fact, noting that claims of ineffective assistance of counsel are normally reserved for § 2255 motions, the appellate court stated: "[T]here are circumstances in which an ineffective assistance claim can be resolved 'beyond any doubt' and 'in the interest of justice[.]' We do so here." (*Id.* at 6 (citation omitted).) The court held that even if Pendergrass's attorneys were constitutionally deficient, there was no evidence in the record to indicate that but for those mistakes, Pendergrass would not have accepted the plea. (*Id.* at 7.) Pendergrass does not assert there has been an intervening change in the law that would exonerate him had it been in force before his conviction was affirmed on direct appeal. Accordingly, Pendergrass cannot relitigate his claim of ineffective assistance of counsel, nor his abuse of discretion claim, and as such both claims are procedurally barred.[3]

---

[3] It must be noted that Attorney Gebauer effectively negotiated a disposition that was quite favorable to Pendergrass. Specifically, although the court determined that Pendergrass faced a Sentencing Guideline range of 210 to 262 months of incarceration (*see* Doc. 216 at 208), Gebauer negotiated a sentencing recommendation from the government of 120-144 months, which the court ultimately accepted. (I*d*. at 212.) *See United States v. Gaskin*, 364 F.3d 438, 470 (2d Cir. 2004) ("A defense attorney does not render objectively unreasonable representation when he advises his client to act in a way that secures a reduced sentence."). Gebauer also negotiated the dismissal of seven other counts against Pendergrass. (*Id*. at 214; Doc. 1.)

## Conclusion

For these reasons, I recommend that Pendergrass's § 2255 Motion to Vacate (Doc. 233) be DENIED. Moreover, I find that an evidentiary hearing is not required, given that district courts need not hold an evidentiary hearing where, as here, "'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Haywood*, 182 F.3d 901, 1999 WL 494869, at *3 (2d Cir. 1999) (quoting 28 U.S.C. § 2255). Here, as discussed above, the record conclusively shows that Pendergrass is entitled to no relief, because his claims were either considered and properly rejected on direct appeal or forfeited by Pendergrass's failure to pursue them on direct appeal.

Dated at Burlington, in the District of Vermont, this 14th day of September, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).